**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Aubrey Leroy NUCKOLS,
Defendant-Appellant.**

**No. 79–1042.**

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1979.

Alan M. Glassman, Dallas, Tex. (Court Appointed), for defendant-appellant.

John M. Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, HILL and VANCE, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Aubrey L. Nuckols, appellant, pleaded guilty to one count of conspiracy to distribute marijuana. 21 U.S.C. § 841(a)(1) (1976). He was sentenced to five years imprisonment plus five years special parole. Nuckols now claims that his guilty plea was invalid, and seeks vacatur of his sentence by way of federal habeas corpus. 28 U.S.C. § 2255 (1976). As grounds therefor, Nuckols advances a variety of arguments, including (1) violation of Fed.R.Crim.P. 11(c)(3), in that the District Court did not timely advise him of his privilege against self-incrimination; (2) inducement, in that the prosecuting attorney "impliedly promised" him a lenient sentence; (3) inducement, in that the prosecuting attorney allegedly threatened to indict appellant's wife; and (4) violation of a pre-existing plea bargain. From a rejection of these claims by the District Court, Nuckols appeals.

At appellant's arraignment, the District Judge questioned him before advising him of the privilege against self-incrimination. The questions related principally to the truth of the matters alleged in the indictment, and appellant's understanding of the conspiracy concept. Thereafter, the court did advise appellant of the privilege against self-incrimination, after which appellant reaffirmed his wish to plead guilty. Appellant contends that the District Judge's delay in advising him of his Fifth Amendment privilege against self-incrimination constituted a violation of Fed.R. Crim.P. 11(c)(3). We disagree.

Fed.R.Crim.P. 11(c)(3) provides that "[b]efore accepting a plea of guilty", federal courts must advise accused persons, *inter alia*, of the privilege against self-incrimination. This was unquestionably done in the instant case. However, appellant contends that if the rule "is to have any effect," we must interpret it as requiring that defendants be advised of the privilege before any colloquy with the court takes place. We decline to adopt such a rigid rule.

The purpose of Rule 11(c) is to assure that guilty pleas are understandingly made, that the decision to forego trial reflects knowledge of constitutional rights that reduce the likelihood of conviction. That purpose is fully served so long as defendants are apprised of their rights before a negotiated plea is finally entered. Appellant does not here contend that he would have pleaded not guilty had the district court earlier advised him of the privilege against self-incrimination. Rather, appellant asserts that the delay resulted only in his making incriminating statements that may have exacerbated his sentence. This contention is without merit. By pleading guilty, appellant waived his privilege against self-incrimination. *See, e. g., McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Thus, even if the self-incrimination warning had preceded all other questioning, the trial judge could have required answers to the same damaging questions following acceptance of appellant's guilty plea. We hold that the trial judge complied with Fed.R. Crim.P. 11(c)(3).

As an alternative ground for vacating his sentence, appellant contends that the prosecuting attorney unlawfully induced him to plead guilty by "venturing a guess" as to the length of sentence appellant "could expect." Without denying that "implied promises" can render a guilty plea involuntary, *see United States v. Pihakis*, 545 F.2d 973 (5th Cir. 1977), appellant's assertions here, even if true, do not make out such a promise. *See United States v. Battle*, 467 F.2d 569 (5th Cir. 1972). Appellant makes the further claim, however, that the prosecuting attorney induced his guilty plea by threatening "to prosecute appellant's wife if he fought the case." The Government has not denied that it made such threats; its position, which the court below adopted, consistently has been that appellant is "precluded" from making this argument because he swore at his arraignment that his plea was not the product of threats. The Government overstates the law.

[T]he barrier of the plea or sentencing proceeding record, although imposing, is

not invariably insurmountable. In administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment.

*Blackledge v. Allison*, 431 U.S. 63, 74–75, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (footnotes omitted). *See Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (per curiam); *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979) (per curiam). Appellant's prior attestation of voluntariness is not an absolute bar to his contentions here, although it imposes upon him a "heavy burden." *Barnes v. United States*, 579 F.2d 364 (5th Cir. 1978).

As for whether that burden has been carried in this case, we are faced with an unusual situation. In support of his assertion that the prosecuting attorney threatened his wife with indictment, appellant alleges only that such threats were made, and that his own attorney acted as a "conduit" for communicating them to him. Normally, such sparse and vague allegations would be insufficient to overcome the "presumption of verity", *Allison*, 431 U.S. at 74, 97 S.Ct. 1621, borne by prior sworn statements. However, as previously indicated, in this case the Government has made no effort specifically to deny that it threatened to indict appellant's wife; its sole response has been to cite an erroneous proposition of law that appellant's prior statements "preclude" his raising the issue here. While perhaps not amounting to a technical negative pregnant, *see* 2A J. Moore, Moore's Federal Practice § 8.24 (2d ed. 1979), the Government's response plainly does nothing to controvert the substance of appellant's claims. We therefore hold that, in the particular circumstances of this case, appellant's prior sworn statements do not foreclose his challenging collaterally the prosecuting attorney's alleged threats to indict his wife. The trial court erred in failing to dispose of this claim on the merits.

Appellant's factual allegations raise a substantial constitutional question: the extent to which prosecutors in plea bargaining may utilize threats against third persons as a negotiating tactic. The Supreme Court has expressly reserved judgment on the issue. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). There seems to be a general consensus, with which we concur, that guilty pleas made in consideration of lenient treatment as against third persons pose a greater danger of coercion than purely bilateral plea bargaining, and that, accordingly, "special care must be taken to ascertain the voluntariness of" guilty pleas entered in such circumstances. *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir. 1978). *See Crow v. United States*, 397 F.2d 284 (10th Cir. 1968); *Johnson v. Wilson*, 371 F.2d 911 (9th Cir. 1967). As a threshold matter, we see no intrinsic constitutional infirmity in broadening plea negotiations so as to permit third party beneficiaries. It is generally within a prosecutor's discretion merely to inform an accused that an implicated third person "will be brought to book if he does not plead [guilty]. . . . If [an accused] elects to sacrifice himself for such motives, that is his choice . . . ." *Kent v. United States*, 272 F.2d 795, 798 (1st Cir. 1959). Recognizing, however, that threats to prosecute third persons can carry leverage wholly unrelated to the validity of the underlying charge, we think that prosecutors who choose to use that technique must observe a high standard of good faith. Indeed, absent probable cause to believe that the third person has committed a crime, offering "concessions" as to him or her constitutes a species of fraud. At a minimum, we think that prosecutors may not induce guilty pleas by means of threats which, if carried out, would warrant ethical censure. *Cf. United States v. Lovasco*, 431 U.S. 783, 791, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); American Bar Association, Code of Professional Responsibility DR 7–103(A) (Rev. Ed. 1975). The question of good faith

is, however, governed by federal standards, *cf. Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), and its absence in plea bargaining may be determined independently of ethical considerations.

On the present record, we cannot say whether the alleged threats on appellant's wife were made in good faith or otherwise. There is no evidence indicating that appellant's wife was an accomplice to appellant's criminal conduct, or implicated in any other that would have justified her prosecution. The trial court's declination to hear appellant's claim in this regard consequently was not harmless error. Appellant must be afforded a hearing on whether the alleged threats to prosecute his wife were founded in good faith upon probable cause. If not, appellant must be given an opportunity to re-plead.

Appellant next argues that his prosecution under 21 U.S.C. § 841(a)(1) (1976) contravened a pre-existing plea bargain. Appellant's present confinement stems from an indictment returned in November, 1976. It seems to be undisputed that appellant previously had been indicted for the identical offense in March, 1976. The earlier indictment apparently resulted in a plea bargain by which appellant agreed to plead guilty to possession of marijuana, and the Government agreed not to prosecute him for conspiracy to distribute. Appellant has maintained throughout that the conspiratorial conduct for which he is presently imprisoned is the same as that which the Government earlier agreed not to prosecute. If this allegation be true, appellant's conviction cannot stand. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Although appellant pressed this claim in his motion before the trial court, the order denying relief not only contained no findings of fact with respect thereto, but indeed made no reference to it whatever. The only "evidence" before us is the Government's assurances at oral argument that the March, 1976 and November, 1976 indictments were directed at different conspiracies. That plainly will not do. Ap-

pellant was entitled to a hearing on this potentially dispositive issue, and the trial court's failure to grant one was plain error.

We have reviewed appellant's other contentions, and find them without merit.

REVERSED and REMANDED for further proceedings.