**Robert David MARTIN,
Petitioner-Appellant,**

v.

**Ralph KEMP, Respondent-Appellee.**

No. 84–8558.
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 21, 1985.

Paula K. Smith, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

Robert David Martin, appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C.A. § 2254 (West 1977). We reverse the judg-

ment of the district court and remand the action for an evidentiary hearing.

## FACTS

On November 3, 1980, Jerry Whidby, an investigator for the Sheriff's Office, Putnam County, Georgia, approached Robert David Martin at Martin's place of employment and attempted to question him about a burglary. Martin refused to answer any questions until he had spoken with an attorney. Whidby placed Martin under arrest and gave him the warnings required under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966). After arriving at the police station, Whidby again attempted to question Martin. Again, Martin asserted his right to have an attorney present during any interrogation. Whidby then attempted to call the lawyer Martin requested. Whidby was unable to contact the attorney, and no further attempts were made to question Martin at that time.

Martin's wife, Teresa Ann Martin, came to the police station to post bail for Martin. Whidby immediately began questioning Teresa about the thefts. Teresa, about eighteen years old, was six or seven months pregnant. Whidby threatened to press charges against Teresa and to incarcerate her if she did not tell all she knew about her husband's alleged involvement in the thefts. Whidby's interrogation of Teresa apparently lasted for some time.

Approximately two to three hours after he had been locked away in a cell, Martin was brought in to see Teresa. Teresa was very nervous, visibly upset, had been crying, and had bitten her fingernails until her fingers were bleeding. Upon seeing Teresa in this emotional state, according to Martin, he agreed to confess to anything that Whidby wanted as long as Whidby would drop all charges against Teresa.

The record does not disclose precisely when Whidby formally charged Teresa with theft by taking. At some point, Whidby placed Teresa under arrest, but promptly released her on $1,000 bail. Martin claims that Whidby refused to dismiss the theft by taking charge against Teresa and threatened to file additional charges against her if Martin did not confess and cooperate fully with the police.

Martin testified that he confessed and pleaded guilty to protect Teresa and their unborn child. Teresa had already suffered one miscarriage, and her doctor had warned that nervous anxiety or undue stress could result in another miscarriage. Teresa was so distressed by Whidby's interrogation that she had to be taken to the doctor the next day.

Two or three days following the interrogation of Teresa, Martin confessed to all of the crimes for which he was convicted. He also assisted the police in recovering much of the stolen property. After the confession, an attorney was appointed to represent him.

At arraignment, Martin pleaded guilty as charged. Contemporaneously with Martin's entering of a guilty plea, the prosecutor dropped charges against Teresa. Charges were dropped because Teresa was pregnant and the Sheriff could not provide her proper medical attention if she were incarcerated.

## PROCEDURAL HISTORY

On November 26, 1980, Martin entered a plea of guilty to three counts of burglary, one count of criminal use of an article with an altered identification mark, one count of entering an automobile, and one count of theft by taking. The court sentenced Martin to twenty years imprisonment on each of the burglary charges, with ten years of each sentence to be served on probation. He also received concurrent sentences of three years for criminal use of an article with an altered identification mark, three years for entering an automobile, and twelve months for theft by taking.

Martin did not appeal these convictions. He did, however, file a state habeas corpus petition claiming that he had been denied counsel during police interrogation, that his confession was coerced, that his guilty plea was involuntary, and that he had been denied effective assistance of counsel. Mar-

tin also alleged that his bond had been increased illegally.

On February 16, 1982, an evidentiary hearing was held on the state habeas corpus petition. Two days later, the state court denied Martin's petition because the judge who accepted Martin's guilty plea had adequately questioned Martin to determine the voluntariness of the plea, and Martin had not informed the judge of any threats or coercion. The state court concluded that Martin's guilty plea had been voluntarily entered, and that Martin could not challenge the constitutionality of activities which had occurred prior to his entering the guilty plea.

On April 8, 1982, the Supreme Court of Georgia denied Martin's motion for a certificate of probable cause to appeal from the denial of his state habeas corpus petition.

Martin filed this federal habeas corpus petition on August 2, 1982. On that same date, on the authority of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the district court dismissed Martin's petition for failure to exhaust state remedies. On November 18, 1983, in an unpublished opinion, we reversed the judgment of the district court and remanded the action for further consideration. *Martin v. Kemp*, 718 F.2d 1114 (11th Cir.1983).

On December 22, 1983, Martin filed a "Brief of Facts" in support of his habeas corpus petition in which he included allegations that he had not knowingly and voluntarily waived his right to an attorney when he confessed. He also alleged that he was never indicted on one of the charges for which he was sentenced, that the waiver of indictment which he had signed was invalid, and that he had been denied an attorney and access to pleadings and other necessary documents during the state habeas corpus proceedings.

The district court concluded that a federal evidentiary hearing was not necessary. Relying upon the transcripts of the sentencing hearing and the state habeas corpus hearing, the district court concluded that the police had probable cause to question Teresa about her involvement in the thefts and to file charges against her. The district court concluded that Whidby's threats against Teresa were lawful and, therefore, did not render either Martin's confession or his guilty plea involuntary.

The district court also concluded that Martin's guilty plea negated any claim that he was unconstitutionally denied counsel during police interrogation. The district court denied Martin's ineffective assistance of counsel claim on the ground that Martin had not been prejudiced by his counsel's alleged failure to properly advise Martin on whether to plead guilty.

### CONTENTIONS OF THE PARTIES

Martin's primary contention is that both his confession and guilty plea were involuntary because they were prompted by Whidby's threats to prosecute Teresa. The state contends that it had probable cause to question Teresa and to charge her with theft by taking. Therefore, the state argues, any threats made against Teresa were lawful and did not render either Martin's confession or his guilty plea involuntary.

The judge who accepted Martin's guilty plea found that the plea was voluntarily entered. Therefore, the state argues, the guilty plea negated those claims which involved matters which occurred prior to the entry of the plea.

The state answers Martin's ineffective assistance of counsel claim by pointing out that Martin was not prejudiced by his attorney's alleged failure to advise him of his rights, and that Martin's attorney successfully negotiated a five-year reduction in Martin's prison term under the plea bargain agreement.

With regard to Martin's other claims, the state argues that Martin has failed to exhaust his state remedies.

### DISCUSSION

 A defendant who knowingly and voluntarily enters a plea of guilty waives all nonjurisdictional challenges to his con-

viction. *See McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. Unit B), *reh'g en banc denied*, 667 F.2d 93 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 992, 102 S.Ct. 2275, 73 L.Ed.2d 1288 (1982).[1] Therefore, we first consider whether Martin's guilty plea was voluntary.[2] If Martin's plea was voluntary, he has waived this claim and all other claims which challenge the validity of his conviction. Only the claim of denial of counsel and access to court documents during the state habeas corpus proceedings would remain. On the authority of *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979), we hold that the evidence as to the voluntariness of Martin's guilty plea was not sufficiently developed in the state habeas corpus proceedings and remand the action for a federal evidentiary hearing.[3]

■ The standard of review for habeas corpus petitions filed by prisoners in state custody is enunciated in 28 U.S.C.A. § 2254(d) (West 1977). Section 2254(d) provides that a state court's findings of fact are presumed to be correct unless one of eight specifically enumerated exceptions applies. This presumption of correctness does not apply, however, to mixed questions of law and fact. Issues which involve mixed questions of law and fact are subject to independent review by an appellate court. *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980); *Hance v. Zant*, 696 F.2d 940, 946–47 (11th Cir.), *cert. denied*, 463 U.S. 1210, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983).

■■ Factual issues include "basic, primary, or historical facts," such as external events and credibility determinations. *Townsend v. Sain*, 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 755 n. 6, 9 L.Ed.2d 770 (1963).

Mixed questions of law and fact involve the application of legal principles to such facts. *Cuyler*, 446 U.S. at 342, 100 S.Ct. at 1714. The issue of the voluntariness of a guilty plea is a mixed question of law and fact.

After an evidentiary hearing, the state court concluded that since Martin had entered the guilty plea in open court, as a sworn statement, and had failed to apprise the court of any coercion or threats that had been made to induce the plea, the plea was freely and voluntarily given. Since the issue of the voluntariness of a guilty plea is a mixed question of law and fact, the district court was not bound by the state court's determination as to the voluntariness of the plea.

The district court properly recognized that the fact that a defendant enters a plea of guilty and states at the time of the plea that the plea is being given freely and voluntarily does not necessarily preclude that defendant from subsequently challenging the voluntariness of the plea. As the Supreme Court held in *Blackledge v. Allison*, 431 U.S. 63, 74–75, 97 S.Ct. 1621, 1629–30, 52 L.Ed.2d 136 (1977):

> [T]he barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable. In administering the writ of habeas corpus and its [28 U.S.C.A.] section 2255 counterpart, the federal courts cannot fairly adopt a *per se* rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment. [Footnotes omitted.]

■ Where the defendant alleges that his guilty plea was induced by government

---

1. Decisions of the Fifth Circuit rendered prior to October 1, 1981, are binding precedent of the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc).

2. Martin claims that his attorney did not fully advise him of his rights in connection with the decision to plead guilty. Even assuming that

this is true, there is no issue here as to whether Martin's plea was entered "knowingly." Martin admits, and the district court found, that the prosecutor adequately advised him of his rights, in open court, before the plea was entered.

3. *See supra* note 1.

threats to prosecute a third party and the government makes no effort to specifically deny that it made the threats, the defendant's prior attestation of voluntariness is not an absolute bar to his subsequent claim that he pleaded guilty only to protect the third party. Rather, the guilty plea merely imposes upon the defendant a heavy burden to establish that the government did not observe a "high standard of good faith" based upon probable cause to believe that the third party had committed a crime. *United States v. Nuckols,* 606 F.2d 566, 569 (5th Cir.1979).

The district court properly identified this as the governing legal principle in this case. The state never specifically denied that Whidby made the alleged threats against Teresa. To the contrary, the state admitted at the state habeas corpus hearing that charges of theft by taking were filed against Teresa. The district court also found that the charges against Teresa were dropped contemporaneously with Martin's entry of the guilty plea. Under the circumstances, the fact that Martin entered a plea of guilty does not negate his ability to collaterally attack the plea as being the product of threats against his wife. Rather, the guilty plea imposes upon Martin a heavy burden to show that *at the time that Whidby made the threats* against Teresa, Whidby did not have probable cause to believe that she had committed a crime. *Nuckols,* 606 F.2d at 568–70; *see Ferguson v. Boyd,* 566 F.2d 873, 878 n. 7 (4th Cir.1977).[4]

While the district court correctly identified the applicable legal principle, it failed to apply that principle to the facts of the case. The district court concluded that since it was revealed *at the guilty plea hearing* that Teresa had actually participated in one of the burglaries and that stolen property from the other burglaries was found in the Martins' home, the state

had probable cause to question Teresa and to file criminal charges against her. The issue here, however, is not what the state knew at the time of the guilty plea hearing, or even what the state knew by the time that it actually filed the charges against Teresa. The issue is what did the state know of Teresa's involvement in the crimes *at the time it made the threats.*

The state admits that the sole bases for the charge of theft by taking against Martin's wife were statements which Martin made about her involvement in the crimes and the fact that stolen property was found in the Martins' home. The state's evidence as to what Martin told the authorities about his wife's involvement in the crimes, however, is conflicting. At the guilty plea hearing, Whidby testified: "Through talking with Mr. Martin he admitted that he and his wife had taken these shingles...." Yet, at the state habeas corpus hearing, the Sheriff testified that Martin said that his wife had nothing to do with the crimes. This conflict in the testimony illustrates how crucial it is to know at precisely what point the state had enough information regarding Martin's wife's involvement to file criminal charges against her.

It is unclear from the record of the state habeas corpus hearing what Martin told the authorities about his wife's alleged involvement in the crimes and at what point he made the alleged statements. The record also does not disclose at what point the stolen property was recovered from the Martins' home. Furthermore, no indication exists as to what Teresa may have said to Whidby to implicate herself in the crimes, or as to when she was formally charged.

The record demonstrates the likelihood that Martin can prove that Whidby did not have probable cause to charge Teresa at the time of the threat. *See Guice v.*

---

**4.** Under the test for probable cause as defined in *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), Martin must demonstrate that at the moment that Whidby made the threats against Martin's wife, "the facts and circumstances within [Whidby's] knowledge and of which [Whidby] had reasonably trustworthy information were not sufficient to warrant a prudent man in believing that [Martin's wife] had committed ... an offense." (Citations omitted.)

*Fortenberry,* 661 F.2d 496, 503 (5th Cir. 1981).[5]

We reverse the district court's denial of the writ of habeas corpus and remand the action for an evidentiary hearing on the question of whether Whidby's alleged threats to prosecute Teresa were founded in good faith upon probable cause. If Whidby's threats were not well-founded, the writ must be granted and Martin must be afforded an opportunity to re-plead. *United States v. Nuckols,* 606 F.2d 566, 570 (5th Cir.1979).

In light of our disposition of this issue, we need not address Martin's other claims.

REVERSED and REMANDED.

---

5. *Guice v. Fortenberry,* 661 F.2d 496 (5th Cir. 1981), is a decision of the former Fifth Circuit and as such is binding precedent in the Eleventh Circuit.